IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VENTANA MEDICAL SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> DAKOCYTOMATION CALIFORNIA INC., <br><br> Defendant. | C.A. No. 04-1522-GMS |

**DEFENDANT DAKOCYTOMATION'S REPLY TO PLAINTIFF VENTANA'S CLAIM CONSTRUCTION BRIEF**

Dated: November 7, 2005

**FISH & RICHARDSON P.C.**
Timothy Devlin (#4241)
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

Michael E. Zeliger (*pro hac vice*)
Fish & Richardson P.C.
225 Franklin Street
Boston, MA 02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Attorneys for Defendant
DakoCytomation California Inc.

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................. 1

    A.  "reagent agitation zone" ................................................................................... 1

    B.  "air mixer" ........................................................................................................ 3

    C.  "air jet" ............................................................................................................. 4

    D.  "air supply means positioned adjacent to a [sic] said reagent agitation zone for mixing reagents" ............................................................................... 5

        i.  Function ................................................................................................. 5

        ii. Structure ................................................................................................ 9

    E.  "adjacent" ........................................................................................................ 13

III. CONCLUSION ............................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*,
 73 F.3d 1573 (Fed.Cir. 1996)..................................................................................9

*B. Braun Med., Inc. v. Abbott Labs.*,
 124 F.3d 1419 (Fed.Cir. 1997)............................................................................9, 10

*BBA Nonwovens Simpsonville, Inc. v. Superior Nonwovens, L.L.C.*,
 303 F.3d 1332 (Fed.Cir.2002)................................................................................5

*Bates v. Coe*,
98 U.S. 31, 38 (1878).............................................................................................14

*DeMarini Sports, Inc. v. Worth, Inc.*,
 239 F.3d 1314 (Fed.Cir. 2001)...............................................................................8

*Generation II Orthotics Inc. v. Medical Tech. Inc.*,
 263 F.3d 1356 (Fed.Cir. 2001) ..............................................................................7

*Genzyme Corp. v. Atrium Med. Corp.*,
 212 F.Supp. 2d 292 (D.Del. 2002)........................................................................11

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
 222 F.3d 951 (Fed.Cir. 2000).............................................................................2, 13

*Hoganas AB v. Dresser Industries, Inc.*,
 9 F.3d 948 (Fed.Cir. 1993)..................................................................................4, 8

*Kahn v. General Motors Corp.*,
 135 F.3d 1472 (Fed.Cir. 1998)...............................................................................9

*Mahn v. Harwood*,
 112 U.S. 354 (1884)...............................................................................................8

*Micro Chem., Inc. v. Great Plains Chem. Co.*,
 194 F.3d 1250 (Fed.Cir. 1999).......................................................................5, 6, 10

*Omega Eng'g, Inc. v. Raytek Corp.*,
 334 F.3d 1314 (Fed.Cir. 2003)............................................................................2, 5

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed.Cir. 2005) (*en banc*)
 (quoting *Multiform Desiccants, Inc. v. Medzam, Ltd.*,
 133 F.3d 1473 (Fed.Cir.1998)) ............................................................................14

*Rodime PLC v. Seagate Tech., Inc.*,
 174 F.3d 1294 (Fed.Cir. 1999)...............................................................................6

*Sage Prods, Inc. v. Devon Indus., Inc.*,
  126 F.3d 1420 (Fed.Cir. 1997)..........................................................................................7

*Seal-Flex, Inc. v. Athletic Track and Court Construction*,
  172 F.3d 836 (Fed.Cir. 1999) ...........................................................................................6

*Schriber-Schroth Co. v. Cleveland Trust Co.*,
  311 U.S. 211 (1940) .......................................................................................................14

*Signtech USA, Ltd. V. Vutek, Inc.*,
  174 F.3d 1352 (Fed.Cir. 1999)..................................................................................5, 6, 12

*Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.*,
  859 F.2d 878 (Fed.Cir. 1988)..........................................................................................8

*Southwall Techs. Inc. v. Cardinal IG Co.*,
  54 F.3d 1570 (Fed.Cir. 1995)......................................................................................1, 14

I.  **INTRODUCTION**

The defendant, DakoCytomation California Inc. ("DakoCytomation"), hereby submits its reply brief to plaintiff Ventana Medical System Inc.'s ("Ventana") opening claim construction brief, pursuant to the March 24, 2005 Scheduling Order.

II.  **ARGUMENT**

Ventana's opening brief looks past important intrinsic evidence – including the claim language itself, the written description, the file history and the cited art – and offers an unduly broad view of the contested claim terms. A close look at the intrinsic record shows that Ventana itself drafted and prosecuted this patent in a much more limited fashion. In fact, for each contested term, Ventana made choices that permanently impact claim scope:

- Ventana chose to distinguish its invention over the prior art because of the invention's "reagent agitation zone."
- Ventana chose to claim an "air jet" rather than an "air stream."
- Ventana chose to claim an "air supply means positioned adjacent a said reagent agitation zone for mixing reagents" rather than a "nozzle."
- Ventana chose to claim this means-plus-function limitation as "adjacent" the "reagent agitation zone."
- Ventana chose to define "adjacent" as excluding "above" or "below."

Having made these choices, Ventana must live with them. As the Federal Circuit has repeatedly held, "A patentee may not proffer an interpretation for the purposes of litigation that would alter the undisputable public record consisting of the claims, the specification and the prosecution history, and treat the claims as a 'nose of wax'". *Southwall Techs. Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed.Cir. 1995). DakoCytomation addresses each of Ventana's arguments below.

A.  **"reagent agitation zone"**

Ventana argues that the meaning of the phrase "reagent agitation zone" is plain on its face because, inter alia, that phrase, "was not defined during prosecution of the '901 patent."

(Docket No. 41, at 5). This statement ignores an express disclaimer made during the prosecution of this patent. In response to the Examiner's rejection, the Ventana inventors told the PTO that their invention was different from the prior art because the '901 patent claimed a "slide having a reagent agitation zone." (Docket No. 44, Ex. B at 16). Because of this purportedly unique feature, liquids could be mixed and would not spill, even in the absence of boundaries, such as receptacle walls. Such statements narrow claim scope pursuant to the doctrine of prosecution disclaimer. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed.Cir. 2003). "The prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct, such as designing around the claimed invention." *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed.Cir. 2000). Where the patentee has made a disclaimer, the doctrine of prosecution disclaimer imposes limitations not strictly found in the ordinary meaning of the claim language. *Omega*, 334 F.3d at 1324.

     As discussed in DakoCytomation's opening brief, Ventana argued during prosecution that the prior art did not disclose or suggest a "slide having a reagent agitation zone." Ventana further argued that it would not be obvious to use the air jets of the prior art to agitate liquids on a slide because for lack of a receptacle and because liquids remain primarily by virtue of association with the biological sample and by surface tension. (Docket No. 43, at 8-10). Therefore, this court should construe the phrase "reagent agitation zone" "congruent with the scope of the surrender." *Omega*, 334 F.3d at 1324. To allow the '901 patent to now cover devices where the mixing of reagents occurs within the confines of receptacle walls would ignore the prosecution history of the '901 patent and would be "inimical to the public notice function provided by the prosecution history." *Hockerson-Halberstadt*, 222 F.3d at 957. Ventana could not have earned these patent claims without convincing the examiner that its invention was different from the prior art, which mixed reagents in receptacles. It should not now be allowed to recover that forfeited claim scope.

2

Accordingly, "reagent agitation zone" is much more narrow than Ventana suggests. It is limited to an area where reagents remain, while being mixed, without walls or boundaries.

B.     "air mixer"

Ventana's arguments concerning the "air mixer" limitation is indicative of its approach to claim construction in this case. It wants to change the scope of its claims. In its brief, Ventana wrote:

> The second phrase that the parties dispute and that must be construed also appears in claim 1 of the '901 patent:
>
> > an air mixer comprising
> > an air jet and
> > an air supply means
> > positioned adjacent to a said reagent agitation zone for mixing reagents,
> > said air mixer directing a jet of air at the reagent agitation zone thereby inducing mixing in the reagent agitation zone.

However, the claim is not structured in this manner. Here is how this claim limitation is actually formatted.

> an air mixer comprising an air jet and an air supply means positioned adjacent to a said reagent agitation zone for mixing reagents, said air mixer directing a jet of air at the reagent agitation zone thereby inducing mixing in the reagent agitation zone.

Note how Ventana realigned the claim so that "positioned adjacent to a said reagent agitation zone for mixing reagents" appears to modify air mixer. However this is different from the actual claim, where there is no indentation, no punctuation, no reference to "said air mixer" or anything else to support Ventana's proposed construction. Instead, Ventana's theory rests on a draft claim that the PTO rejected as indefinite. However, the Ventana inventors changed that draft claim such that the air supply means became "positioned adjacent to a said reagent agitation zone for mixing reagents," and thereby overcame the rejection. Thus the Court should reject Ventana's efforts to realign, if not rewrite this claim limitation.

C.     "air jet"

The parties agree that "air jet" should be given its ordinary meaning. DakoCytomation disagrees with Ventana that the ordinary meaning of "air jet" is simply an amorphous stream of air. (Docket No. 41, at 7). This definition ignores the word "jet" and tries to redefine "air jet" as "air stream." As DakoCytomation argued in its Markman brief, the ordinary meaning of "air jet" is an air flow with a shape similar to the flow of air that exits the back of a jet engine or from a small circular hole.

Ventana claims that support for its definition of "air jet" resides in the specification. It points out various instances where the written description describes the air mixer as using gas streams. *Id.* The problem with the argument is that the asserted claims do not contain the word "stream." Instead, they claim air "jets." If Ventana wanted to claim the broader term "streams" perhaps it could have done so (if the prior art allowed). However, Ventana cannot make that change now, even if the choice was an oversight or error. *See Hoganas AB v. Dresser Industries, Inc.*, 9 F.3d 948, 951 (Fed.Cir. 1993) (inappropriate for court to interpret the claim differently just to cure a drafting error).

Ventana also argues that the claims, the written description, and the file history place no restrictions on the shape of the air jet and that air jet should be given its ordinary meaning. (Docket No. 41, at 7-8). But Ventana misses the point, the restriction was created by choosing the word "jet" rather than the word "stream." It is the ordinary meaning of the word "jet" that limits the claim. The specification, file history and cited art simply all support the conclusion that one of ordinary skill in the art at the relevant time understood that air "jet" is air flow of a particular shape.

In the specification, the word "jet" is used only when describing the draining mechanism, the rinsing mechanism, and the vortex mixing mechanism. In all these instances the stream of liquid or gas has a conical or cylindrical shape. The jet draining mechanism is pictured in Figure 34. (col.6: l. 21). This figure depicts a fluid stream labeled 150A which is shaped as a cylinder. (col. 24: l. 40). The depiction of the rinsing station in figure 12 is remarkably similar in its

4

essential details to the vortex mixing station depicted in figure 16. And just as a cylindrical or conical stream of air would emitted from nozzle 351 in figure 16, a cylindrical or conical stream of liquid will be emitted from nozzle 232 in figure 12. Therefore every time the '901 patent uses the term "jet", it is used in the context of a conical or cylindrical shaped stream of gas or liquid. By contrast, nothing in the intrinsic record support Ventana's view that any air flow is an air jet.

    **D.**    **"air supply means positioned adjacent to a [sic] said reagent agitation zone for mixing reagents"**

Both parties agree that this claim limitation is written in means-plus-function format and therefore subject to § 112 ¶ 6. This is important common ground, because it dictates a different claim construction methodology. A court construes means-plus-function limitations in two steps. First it defines the function; then it identifies the corresponding structure. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1321 (Fed.Cir.2003); *BBA Nonwovens Simpsonville, Inc. v. Superior Nonwovens, L.L.C.*, 303 F.3d 1332, 1343 (Fed.Cir.2002). The parties disagree as to both function and structure.

    **i.**    **Function**

Determining the function of a mean-plus-function limitation is an important step in claim construction, since misidentifying the function may lead to an overly restrictive search for corresponding structures. *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed.Cir. 1999) ("Because it had adopted an unnecessarily narrow function for the "weighing means," the district court improperly restricted its search for corresponding structure in the specification.").

Ventana argues that the function of the above means limitation is only for "air supply" and not for "mixing reagents." (Docket No. 41, at 9). Ventana's conclusion is based on two arguments: One, that "air supply" is functional language and therefore this case is "indistinguishable" from *Signtech USA, Ltd. V. Vutek, Inc.*, 174 F.3d 1352, 1356 (Fed.Cir. 1999) which held that "ink delivery means" was equivalent to "means for ink delivery." (Docket No.

5

41, at 9). And two, that the modifier "for mixing reagents" in the claim language modifies only "air mixer" and not "air supply means." *Id.*

Addressing the first argument, Dakocytomation agrees that "air supply" is functional language and that it could properly be included as a function of the means-plus-function limitation. (Docket No. 43, at 13). But by focusing exclusively on "air supply" as functional language, Ventana comes to the wrong conclusion about *Signtech* and ignores "mixing reagents," which is also functional language. *Signtech* is readily distinguishable from this case. In *Signtech*, the court focused on the following claim limitation:

> ***ink delivery means*** positioned on opposite sides of said substrate, said ink delivery means fluidly communicating with an ink source. 174 F.3d at 1355 (emphasis original).

After the phrase "ink delivery means" there is no prepositional "for" to signal additional elements for the recited function. This is in direct contrast to the claim language in the '901 patent:

> ***air supply means*** positioned adjacent to a said reagent agitation zone ***for*** mixing reagents,… (Col. 25, ll. 14-16.) (emphasis added).

The Federal Circuit has attached special significance to the preposition "for" in the context of identifying function in a means-plus-function limitation. *Micro Chem.*, 194 F.3d at 1258 ("the properly identified function of this means-plus-function element, signaled by the preposition 'for,' is …"); *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1303 (Fed.Cir. 1999) ("The prepositional link 'for' ties the 'means' to its function"); *Seal-Flex, Inc. v. Athletic Track and Court Construction*, 172 F.3d 836, 849 (Fed.Cir. 1999) (in distinguishing between step of and step for, the court says that "the preposition 'for' colloquially signals the recitation of a function"). In this case, the means clause is followed by the preposition 'for' which in turn is followed by the functional language "mixing reagents." Ventana argues that the prefatory claim language solely, in exclusion of the functional language after the prepositional "for," informs the

6

definition of the function.  This is contrary to the weight of Federal Circuit cases.  *Generation II Orthotics Inc. v. Medical Tech. Inc.*, 263 F.3d 1356, 1364 (Fed.Cir. 2001) (identifying the function as "allowing controlled medial and lateral inclination …" when the claim language was "joint means … for allowing controlled medial and lateral inclination …"); *Sage Prods, Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1427-28 (Fed.Cir. 1997) (identifying the function as both "closing the slot means" and "controlling access" when the claim language was "closure means … for controlling access …).  Indeed, Ventana does not cite a single case in its opening claim construction brief where the Federal Circuit ignored functional language immediately after the preposition 'for' in cases where the court had already determined that § 112 ¶ 6 applied.  Accordingly, this court should reject Ventana's unsupported approach to claim construction.

Ventana has another argument for ignoring the functional language "mixing reagents." Ventana argues that "although the words 'for mixing reagents' appear in the second disputed phrase, these three words modify and explain the 'air mixer' as a whole." (Docket No. 41, at 9). Ventana argues that in the original claim language "for mixing reagents" modified "air mixer" and that a subsequent amendment, i.e. adding "air supply means" in between "air mixer" and "for mixing reagents," did not change the fact that "for mixing reagents" modifies "air mixer as a whole." (Docket No. 41, at 6-7 and 9-10).  While "for mixing reagents" perhaps modified "air mixer" in the original claim language, this is immaterial.  First, the original claim was rejected as indefinite, i.e. the examiner found that it was missing elements and was ambiguous.  In other words, Ventana asks the Court to find support for its construction in an invalid and incomprehensible claim.  Moreover, Ventana amended the claim to overcome the rejection as follows.

> air mixer <u>comprising an air jet and an air supply means</u> positioned adjacent <u>to</u> a <u>said reagent</u> agitation zone for mixing reagents <s>when in the air agitation zone</s>

(Docket No. 44, Ex. E).  Ventana inserted the phrase "comprising an air jet and an air supply means" into the claim next to "for mixing reagents." It did not add any punctuation, indentation

7

or words to indicate that this functional language refers back to "air mixer." Without such guidance, one sees that it is the "air supply means" that is "for mixing reagents." Ventana asks the Court to set aside the claim's language and attempt to divine the Ventana inventors' intent behind its claim amendments. This is virtually impossible, and also irrelevant. It is a fundamental tenet of patent law that the claims in a patent give public notice of the scope of the patent's protection. *See Mahn v. Harwood*, 112 U.S. 354, 361 (1884) ("The public is notified and informed by the most solemn act on the part of the patentee, that his claim to invention is for such and such an element or combination, and for nothing more"). In keeping with the public notice function of claim language, "claims are construed as one skilled in the art would construe them," not as the inventor would construe them. *Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.*, 859 F.2d 878, 882 (Fed.Cir. 1988). The test is objective, not subjective.

      The above amendment was made to overcome a § 112 ¶ 2 indefiniteness rejection. Objectively, it is possible that the examiner read the amended claim language and thought that the claim drafter was purposefully inserting the phrase "air supply means" near "for mixing reagents" to make "for mixing reagents" modify "air supply means" and thereby allowed the claim. We will never know[1] and accordingly Ventana's categorical statement that "the amendment did not change the fact that the 'air mixer' as a whole … is what is … for mixing reagents" is mere speculation. (Docket No. 41, at 7). If the claim drafter wanted to make sure that "for mixing reagents" was not interpreted to modify "air supply means," the claim drafter had numerous opportunities, as discussed in DakoCytomation's opening brief. *Also see Hoganas*, 9 F.3d at 951 ("If [the inventor's assignee,] who was responsible for drafting and prosecuting the patent, intended something different, it could have prevented this result through clearer drafting … It would not be appropriate for us now to interpret the claim differently just to cure a drafting error … That would unduly interfere with the function of claims in putting

---

[1] The examiner dropped the indefiniteness rejection without comment. Some Federal Circuit decisions warn against drawing inferences from the "silence" of an examiner during prosecution. *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1326 (Fed.Cir. 2001) ("Drawing inferences of the meaning of claim terms from an examiner's silence is not a proper basis on which to construe a patent claim…").

competitors on notice of the scope of the claimed invention"). *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.,* 73 F.3d 1573, 1581 (Fed.Cir. 1996) (given two equally plausible definitions of 'between', the court adopted the narrower one, which established noninfringement, because to do otherwise would undermine the fair notice function of the definiteness requirement of § 112).

Ultimately, Ventana itself chose to claim "air supply means…" It did not use any punctuation or language to suggest that this exclusively modified air mixer. The phrase "mixing reagents" is functional language that follows the preposition "for." Courts attach special significance to functional language following the preposition "for." Ignoring such functional language defeats the public notice function of the claims. The modifier "for mixing reagents" is nearer in grammatical distance to "air supply means" than "air mixer," implying that "for mixing reagents" modifies "air supply means." For all these reasons, mixing reagents is a properly identified function of the "air supply means."

### ii. Structure

Section 112, ¶ 6 states that:

> An element in a claim for a combination may be expressed as a means … for performing a specified function …, and such claim shall be construed to cover the corresponding structure … described in the specification and equivalents thereof.

In § 112 ¶ 6 claims, the claim *shall* be construed to cover structures described in the specification. *Kahn v. General Motors Corp.*, 135 F.3d 1472, 1476 (Fed.Cir. 1998) ("Unlike the ordinary situation in which claims may not be limited by … the specification, … in writing a claim in means-plus-function form, a party is limited to the corresponding structure disclosed in the specification and its equivalents"). Courts have also interpreted "corresponding" as requiring that the structure in the specification or prosecution history "clearly link[] or associate[]" that structure with the identified function. *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed.Cir. 1997). DakoCytomation has demonstrated in its opening brief the required link and association between the nozzles, the nozzle angles, the nozzle channels, the vortex block mixers,

9

and the identified function of supplying air to mix reagents. (Docket No. 43, at 16-18). Each piece of this structure is clearly associated in the written description with the function of supplying air to mix reagents, and each piece of this structure is necessary to supply air to mix reagents.

Ventana makes three arguments as to why a nozzle and nothing else is the corresponding structure for the means-plus-function limitation.

Ventana first argues that the specification at col. 16, ll. 16-18 "explicitly refers to two nozzles that supply air when it states: 'The pressurized air is emitted by nozzles 351 and 355 (FIG 17), stirring the reagent layer on the respective slides.'" (Docket No. 41, at 10). Here, Ventana is selectively quoting bits of the specification and turning a blind eye to the rest of the specification where the function of supplying air is mentioned. Many of these structures are mentioned in DakoCytomation's Markman brief. (Docket No. 43, at 16-17). In addition, Ventana mistakenly identifies the function of the means-plus-function limitation as only supplying air. As such, Ventana commits the same mistake the Federal Circuit warned about in *Micro Chem.*, adopting an unnecessarily narrow function and then improperly restricting the search for corresponding structure. 194 F.3d at 1258.

The second argument advanced by Ventana for why only a nozzle is the corresponding structure is that "the examiner stated that the essential element was a nozzle." (Docket No. 41, at 12). Here, Ventana has apparently misconstrued the examiner's rejection. First, it should be noted that when the examiner made that rejection and stated that essential elements were missing from the claim, the examiner was responding to the claim as originally drafted which did not have a means-plus-function claim limitation. The examiner stated that a nozzle was an essential element needed to overcome a § 112 ¶ 2 indefiniteness problem, not that a nozzle was essential "corresponding" structure in a § 112 ¶ 6 limitation. Given that the examiner was addressing a completely different problem, his statements regarding the nozzle and the patentee's amendment do not "clearly link[] or associate[]" the structure to the function. *B. Braun*, 124 F.3d at 1424 ("structure disclosed in the specification is 'corresponding' structure only if the specification or

10

prosecution history clearly links or associates that structure to the function recited in the claim. This duty to link or associate structure to function is the *quid pro quo* for the convenience of employing § 112, ¶ 6."). Moreover, to the extent that the examiner's rejection is relevant, Ventana's characterization of it is incomplete and likely incorrect.

The examiner stated that the omitted elements were "an air mixer having a nozzle for directing air at an air agitation zone of the sample support for mixing reactants on the sample support." (Docket No. 44, Ex. D at 2). The examiner cited many missing elements: 1) a nozzle; that must 2) direct air at an air agitation zone; that must be 3) for mixing reagents. By seizing on the nozzle as the only missing element, Ventana is trying to get around other essential elements cited by the examiner, most notably, the nozzle must direct air for mixing reagents.

For its third argument, Ventana argues that not all the structures cited by DakoCytomation in the joint claim chart are necessary to supply air. (Docket No. 41, at 12-13). First, this argument is not responsive to the DakoCytomation's argument that all the structures cited by DakoCytomation are necessary for supplying air *to mix reagents*. Ventana's claim construction brief does not address this point except in footnote 3 where Ventana says that "the only disclosed structure necessary for performing the claimed function is the nozzle, regardless of whether the claimed function is … 'mixing reagents.'" (Docket No. 41, at 12, fn.3). This argument defies common sense. How can a bare nozzle alone be the necessary structure to supply air for mixing reagents? At an absolute minimum, the nozzles need to be pointed in the right direction to be able to mix reagents; a nozzle pointed away from the reagent agitation zone is useless for mixing reagents.[2]

Next, Ventana criticizes DakoCytomation's proposed corresponding structure by arguing that DakoCytomation is importing irrelevant structure from the specification. To that end Ventana cites *Genzyme Corp. v. Atrium Med. Corp.*, 212 F.Supp. 2d 292 (D.Del. 2002) for the

---

[2] In addition, assuming, *in arguendo*, that the recited function is only supplying air, the vortex air mixer blocks, among other things are nonetheless clearly linked structures. (See e.g., Col. 12, lines 48-49) ("[V]ortex jet block 222, mounted on plate 22, has an [sic] pressurized air supply channel 350 and nozzle 351."). Thus, it cannot be that the nozzle is the only corresponding structure.

11

proposition that certain irrelevant structures should not be included as corresponding structures. (Docket No. 41, at 12). In that case, it did not matter whether the divider was horizontal, vertical, or any angle at all as long as the divider carried out the function of dividing two chambers. By contrast, the angles in this case are critical. The Ventana inventors described them in a detailed manner in the written description. They explained that the air jets point at the reagent agitation zone with an angle of between 5 to 15 degrees with respect to the horizontal. (Col. 12, ll. 52 – 56.) These angles are critical to the functioning of the invention. Without the proper angles, the nozzles could not carry out the function of supplying air to mix reagents. According to Ventana's construction any nozzle, pointed in any direction would be covered by the asserted claims – regardless whether they supply air as part of the air mixer or more particularly for mixing reagents.

Once again, as DakoCytomation has argued in its opening claim construction brief, even if the court determines that the identified function is to supply air, the angles at which the nozzles are aimed should be included as corresponding structure. (Docket No. 43, at 18). Pertinent here is the decision in *Signtech*, which Ventana relies on in its opening claim construction brief for the argument that air supply is the only properly identified function. (Docket No. 41, at 9). In *Signtech* the court first held that § 112, ¶ 6 should be applied to the claim limitation "ink delivery means" and that the function was ink delivery. 174 F.3d at 1356. Next the court agreed with the trial court's determination that the corresponding structure included both a "pulse-width modulated air source for controlling delivery of the ink to the substrate and a second low-volume, high-pressure air source *for continuous cleaning of the ink jets*." *Id.* at 1357 (emphasis added). It is significant that the court included as corresponding structure the second air source, which on its face, was not strictly tied to ink delivery. Indeed, the accused infringing device only had a single air source. *Id.* at 1355. The court included the second air source as corresponding structure after noting that the patent's preferred embodiment included a second air source, that the patent's summary-of-the-invention section stated that the invention works because its sprayhead design prevents ink jet clogging, that the patent's specification attributed the unique

12

capability of the invention to the invention's use of two air sources, and that the patent's background section explained how the use of two air sources overcame prior design problems. This case is analogous. The '901 patent's two embodiments of the air mixer both have nozzles with central axes that make acute angles with the horizontal. The '901 patent's disclosure-of-the-invention section states that the invention includes at least one gas stream "having a central axis forming an acute angle with the planar support surface." And in the '901 patent prosecution history the inventor states that "it would not be obvious to use the air jet of Hulette to agitate liquids located on the slide because agitating liquids on slides pose difficult and unexpected agitation problems." (Docket No. 44, Ex. B, at 16). In Hulette's preferred embodiment, the air jet is aimed at "an angle of between about 75 degrees and about 80 degrees to the liquid surface (horizontal)." (Docket No. 44, Ex. C, at 8, ll. 15-16). Therefore the inventor was stating that their use of acute angles, i.e. angles less than 75 degrees to the horizontal overcame prior design problems, i.e. the inability to agitate liquids on slides. In conclusion, even if the court decides that the identified function is solely supplying air, based on statements in the written description and prosecution history, the court should still include the nozzle angles as corresponding structure.

### E. "adjacent"

Ventana asserts that the term "adjacent" is plain on its face and does not require construction. (Docket No. 41, at 13). However, there are multiple everyday meanings to the word "adjacent." The word could mean close to, next to, or even adjoining. For example, when someone says that he is staying in an adjacent hotel room, that commonly means he is staying in a room next to yours, not in a room on the floor above or the floor below. The context in which the word is used matters. In cases where the plain claim language is subject to multiple common meanings, it is imperative that the court consult the intrinsic evidence, i.e. the written description and the prosecution history, to determine the meaning of the claim language. *Hockerson-Halberstadt*, 222 F.3d at 955 ("arguments and amendments made during the prosecution of a patent application … as well as the specification and other claims ***must*** be examined to

13

determine the meaning of terms in a claim") (emphasis original) (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed.Cir. 1995)); *Schriber-Schroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 217 (1940) ("The claims of a patent are always to be read or interpreted in light of its specifications"); *Bates v. Coe*, 98 U.S. 31, 38 (1878) ("in case of doubt or ambiguity it is proper in all cases to refer back to the descriptive portions of the specification to aid in solving the doubt or in ascertaining the true intent and meaning of the language employed in the claims.")

Despite asserting that claim construction is not needed, Ventana does offer that the meaning of "adjacent" should be "near." (Docket No. 41, at 13). To support this construction, Ventana cites the written description at 23:45-46 ("the center of the gas jet or cone 356A is approximately 2 mm above the surface of the slide.") *Id.* It is unclear why this quoted passage has any relevance in interpreting the meaning of "adjacent." The word adjacent does not even appear in the quoted passage.

This court should not adopt Ventana's proposed construction since Ventana has not demonstrated that the patentee used the term "adjacent" to mean near. Instead, this court should adopt DakoCytomation's proposed construction that "adjacent" means next to, but not above or underneath. As discussed in DakoCytomation's Markman brief, this definition is adequately supported by the written description and compelled by the prosecution history.

Several times in the prosecution of the '901 patent, Ventana's inventors distinguished "below" or "beneath" as different from "adjacent to." (Docket No. 43, at 20-22). The standard in claim construction is how a person skilled in the art would interpret a claim term after reading the intrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed.Cir. 2005) (*en banc*) ("the court starts the decisionmaking process by reviewing the same resources as would ... [a person of ordinary skill in the field], *viz.*, the patent specification and the prosecution history.") (quoting *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed.Cir.1998)). After reading the arguments made by Ventana's inventors, a person skilled in the art would believe that there is a difference between the term "adjacent" and the terms "below" or "above",

14

since "above" is symmetrical to "below." If a person skilled in the art would construe the term "adjacent" different from "above" and "below," this court should as well.

### III.    CONCLUSION

For the foregoing reasons, DakoCytomation respectfully requests that it adopt its proposed construction the contested terms, which can be found at Exhibit M to the Declaration of Timothy Devlin. (Docket No. 44, Ex. M).


Dated: November 7, 2005        FISH & RICHARDSON P.C.


                               By: /s/ *Timothy Devlin*
                                   Timothy Devlin (No. 4241)
                                   919 North Market Street, Suite 1100
                                   P.O. Box 1114
                                   Wilmington, Delaware 19899
                                   (302) 652-5070

                                   Michael E. Zeliger (*pro hac vice*)
                                   225 Franklin Street
                                   Boston, Massachusetts 02110
                                   (617) 542-5070

                               Attorneys for Defendant,
                               DakoCytomation California, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2005, I electronically filed **DEFENDANT DAKOCYTOMATION'S REPLY TO PLAINTIFF VENTANA'S CLAIM CONSTRUCTION BRIEF** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Richard H. Morse
YOUNG, CONAWAY, STARGATT & TAYLOR
The Brandywine Bldg., 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE  19899
**(Also served on the foregoing via hand delivery)**

*Attorneys for Plaintiff
Ventana Medical Systems, Inc.*

I hereby certify that on November 7, 2005, I have mailed via Federal Express, the document(s) to the following non-registered participants:

Ron E. Shulman
Roger J. Chin
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA  94304
(650) 493-9300

*Attorneys for Plaintiff
Ventana Medical Systems, Inc.*

> */s/ Timothy Devlin*
> Timothy Devlin

21201478.doc