## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VENTANA MEDICAL SYSTEMS, INC.,

        Plaintiff,

   v.

DAKOCYTOMATION CALIFORNIA INC.,

        Defendant.

Civil Action No. 04-1522-GMS

## PLAINTIFF VENTANA MEDICAL SYSTEMS, INC.'S
## ANSWERING CLAIM CONSTRUCTION BRIEF

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Richard H. Morse (No. 531)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899
(302) 571-6651
rmorse@ycst.com

Attorneys for Plaintiff
Ventana Medical Systems, Inc.

Of Counsel:

Ron E. Shulman (*pro hac vice*)
Roger J. Chin (*pro hac vice*)
Matthew R. Reed (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

DATED: November 7, 2005

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF THE PROCEEDING.............................................................. 1

II.   SUMMARY OF ARGUMENT ...................................................................................... 1

III.  ARGUMENT............................................................................................................... 1

    A.    The Meaning of "Reagent Agitation Zone" is Plain on Its Face and
        Requires No Construction....................................................................................... 1

        1.    A Finding of Prosecution Disclaimer Requires a Clear,
            Unmistakable and Unambiguous Disavowal of Claim Scope. ................... 2

        2.    The Inventors Did Not Disclaim the Scope of "Reagent Agitation
            Zone" During Prosecution. ....................................................................... 4

        3.    Defendant's Construction is Improperly Based on Litigation
            Strategy Rather Than on the Intrinsic Evidence. ........................................ 7

    B.    "An Air Mixer Comprising an Air Jet and an Air Supply Means Positioned
        Adjacent to a Said Reagent Agitation Zone for Mixing Reagents."....................... 8

        1.    The "Air Mixer" is "Positioned Adjacent to a Said Reagent
            Agitation Zone for Mixing Reagents." ...................................................... 8

        2.    "Air Jet" is a Stream of Air Without Restriction on the Shape of
            the Stream. ............................................................................................... 9

        3.    The Proper Construction of "Air Supply Means".................................... 11

            a.    The Function of the Air Supply Means is to Supply Air. ............. 11

            b.    The Structure Corresponding to the Air Supply Means is a
                Nozzle. ...................................................................................... 12

         4.    The Meaning of the Term "Adjacent" is Plain on Its Face, But if
            Construed, Means "Near" Without the Unwarranted Limitation of
            being "Not Above or Underneath." ........................................................... 13

IV.  CONCLUSION.......................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*B. Braun Med., Inc. v. Abbott Labs.*,
   124 F.3d 1419 (Fed. Cir. 1997)...........................................................................12

*CCS Fitness Inc. v. Brunswick Corp.*,
   288 F.3d 1359 (Fed. Cir. 2002)............................................................................2

*Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*,
   248 F.3d 1303 (Fed. Cir. 2001).........................................................................12

*Micro Chem., Inc. v. Great Plains Chem. Co.*,
   194 F.3d 1250 (Fed. Cir. 1999).........................................................................12

*Northern Telecom Ltd. v. Samsung Elecs. Co.*,
   215 F.3d 1281 (Fed. Cir. 2000)........................................................................3, 6

*Omega Eng'g, Inc. v. Raytek Corp.*,
   334 F.3d 1314 (Fed. Cir. 2003).........................................................................2, 3

*SanDisk Corp. v. Memorex Prods., Inc.*,
   415 F.3d 1278 (Fed. Cir. 2005)......................................................................3, 4, 6

*Signtech USA, Ltd. v. Vutek, Inc.*,
   174 F.3d 1352 (Fed. Cir. 1999).........................................................................11

*Specialty Composites v. Cabot Corp.*,
   845 F.2d 981 (Fed. Cir. 1988)........................................................................9, 10

*Stiftung v. Renishaw PLC*,
   945 F.2d 1173 (Fed. Cir. 1991)............................................................................7

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002)......................................................................3, 10

*Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*,
   112 F.3d 1137 (Fed. Cir. 1997)............................................................................7

## STATUTES

35 U.S.C. § 112....................................................................................................8

DB01:1899721.1                                                                                        061636.1003

I.    **NATURE AND STAGE OF THE PROCEEDING**

Pursuant to ¶ 4 of the Court's March 24, 2005, Scheduling Order, Plaintiff Ventana

Medical Systems, Inc. ("Ventana") respectfully submits this Answering Claim Construction

Brief to address the points raised by defendant DakoCytomation California Inc. in its brief filed

October 17, 2005. A *Markman* hearing in this matter is scheduled to be held on December 5,

2005, beginning at 9:00 a.m.

II.    **SUMMARY OF ARGUMENT**

Defendant's proposed constructions are not supported by any reasonable review of the

intrinsic evidence.  Defendant asks the Court to rewrite the claim language of claims 1 and 45

and to replace easily understood claim language with a proposal cobbled together (i) from

unwarranted limitations imported from the specification, and (ii) from portions of the

prosecution history that are, at best, ambiguous and unrelated to the claim terms at issue.

Ventana's proposed constructions, on the other hand, reflect the plain language of the claim

terms, consistent with their context in the claims, the specification, and the prosecution history.

Ventana respectfully asks this Court to adopt its proposed constructions and reject defendant's

proposed constructions.

III.    **ARGUMENT**

    A.    **The Meaning of "Reagent Agitation Zone" is Plain on Its Face and Requires No Construction.**

As Ventana stated in its Opening Claim Construction Brief ("Ventana's Opening Br.")

(D.I. 41), the meaning of the term "reagent agitation zone" is plain on its face and does not need

to be construed.  This is especially true in light of the context in which this phrase is used in the

claim: "said slide having a *reagent agitation zone* for adding and mixing reagents thereto located

on the slide's upper surface." Ventana Ex.[1] A at 25:10-12 (emphasis added).  However, should

the Court determine that a construction of "reagent agitation zone" is necessary, Ventana submits

---

[1] "Ventana Ex. ___ " refers to the specified exhibit to the Declaration of Matthew R. Reed in
Support of Plaintiff's Opening Claim Construction Brief (D.I. 42).

-1-

that the language of the claim underscored above provides the proper construction. As the claim states, a "reagent agitation zone" simply is an area on the slide's upper surface where reagents are added and mixed.

In contrast to this straightforward construction, defendant asks the Court to import two additional requirements into the interpretation of "reagent agitation zone." First, defendant asks that the term be construed as requiring "a region where the apparatus adds and mixes reagents *without spilling them.*" Defendant DakoCytomation's Opening Claim Construction Brief ("Def.'s Opening Br.") (D.I. 43) at 7 (emphasis added). Second, defendant asks that the term be construed as requiring a negative limitation: "the region is not a 'reagent agitation zone' if it has structural boundaries that retain reagents, such as the walls of a receptacle." *Id.*

As alleged support for these two additional requirements, defendant attempts to rely on statements made by Ventana during prosecution. However, as demonstrated below, none of the cited statements is even related to the term "reagent agitation zone," and none of them constitutes an unambiguous disavowal of the meaning or scope of that term. Accordingly, defendant's proposed construction should be rejected.

> ### 1. A Finding of Prosecution Disclaimer Requires a Clear, Unmistakable and Unambiguous Disavowal of Claim Scope.

The applicable authorities recognize the "'heavy presumption' that a claim term carries its ordinary and customary meaning." *CCS Fitness Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed. Cir. 2002). The "heavy presumption" can be overcome only if "the patentee unequivocally imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). For the doctrine of prosecution disclaimer to attach, the patentee must have "unequivocally disavowed a certain meaning to obtain his patent." *Id.* at 1324. The alleged disavowing statement must be both "so clear as to show reasonable clarity and deliberateness, and so unmistakable as to be unambiguous evidence of disclaimer." *Id.* at 1325 (citations omitted). The Federal Circuit has "consistently rejected prosecution statements too vague or ambiguous to

061636.1003

qualify as a disavowal of claim scope." *Id.* at 1325. To conclude that such a disavowal was made, a court must determine that the applicants disclaimed scope of coverage by "using words or expressions of manifest exclusion or restriction." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002).

In determining whether statements made during prosecution rise to the level of a disavowal or disclaimer, the Court must find that the statements "have no reasonable interpretation other than to disavow" the scope of the term. *SanDisk Corp. v. Memorex Prods., Inc.,* 415 F.3d 1278, 1287-88 (Fed. Cir. 2005) (holding that prosecution disclaimer did not apply because an alternate reading of the prosecution history is "at least reasonable"). If the prosecution history is vague and subject to inferences, it cannot be used to limit the ordinary meaning of the claim term. *See Northern Telecom Ltd. v. Samsung Elecs. Co.*, 215 F.3d 1281, 1295 (Fed. Cir. 2000) ("Vagueness and inference cannot overcome an ordinary meaning of a claim term").

The Federal Circuit's recent decision in the *SanDisk* case illustrates how difficult it is to find prosecution disclaimer. In that case, the Federal Circuit twice refused to find prosecution disclaimer. In the first instance, the district court construed the phrase "user data and overhead data portions" to mean that each memory sector in a flash memory device must have both a user data portion and an overhead data portion. *See SanDisk*, 415 F.3d at 1282. To reach this conclusion, the district court relied on SanDisk's statement to the Examiner that "in each sector is a sectors [sic, sector's] worth of user data and some overhead information." *Id.* at 1288. After reviewing this statement "in [the] context" in which it was made during prosecution, the Federal Circuit observed that SanDisk's reference to "each sector" did not clearly mean **every** sector in the memory device. *See id.* The Federal Circuit further observed that it was "at least reasonable" to read "each sector" as referring only to those sectors that were subject to the claimed method. *Id.* On this basis, the Federal Circuit concluded that SanDisk's statement did not constitute a clear and unmistakable surrender of claim scope, and reversed the district court's construction. *See id.*

-3-

In the second instance, the district court cited to statements in the prosecution history where SanDisk had distinguished the prior art by asserting that its invention defined a way of configuring flash memory in a manner similar to a hard disk drive. *Id.* at 1288-89. Relying on these statements, the district court held that because the invention sought to emulate the configuration of hard disk drives in which memory cells are grouped into partitioned sectors, this necessarily means that every one of the cells in the claimed flashed memory also must be grouped into partitioned sectors. *Id.* at 1288.

The Federal Circuit disagreed. It found that SanDisk's statements were directed to explicating the claimed invention with regard to the claimed memory organization, and did not purport to exclude configurations of memory cells that do not possess the characteristics of a hard disk drive memory. *Id.* at 1289-90. The Federal Circuit concluded that "SanDisk did not unmistakably surrender the grouping of [flash] memory cells into non-partitioned sectors." *Id.* at 1290.

### 2. The Inventors Did Not Disclaim the Scope of "Reagent Agitation Zone" During Prosecution.

Application of the foregoing authorities to the facts of this case reveals that during prosecution, the inventors did not disclaim or disavow the scope of "reagent agitation zone" at all, much less by clear, unmistakable and unambiguous statements.

The relevant facts are as follows. During prosecution, the Examiner issued an obviousness rejection in light of prior art that disclosed cuvettes rather than the claimed slides. *See* Ventana Ex. C. In this rejection, the Examiner never mentioned the "reagent agitation zone." *See id.* Ventana responded to this rejection by distinguishing the claimed slides from the prior art cuvettes. *See* Ventana Ex. D at 12. The response also never mentioned the claimed "reagent agitation zone." *See id.*

The Examiner then issued another office action, reasserting his obviousness rejection. The Examiner pointed out that in its prior response, Ventana had not addressed a cited reference—Kamentsky—on which the Examiner had based an assertion that slides are equivalent

to cuvettes. *See* Ventana Ex. E at 2. In response, Ventana emphasized the difference between a slide and a cuvette and distinguished the Kamentsky reference as follows:

> Accordingly, Kamentsky et al. teaches that biological specimens can be applied to slides or cuvettes. However, not all biological testing is performed on cells. The apparatuses of the present invention are generally but not exclusively useful for testing solid biological specimens. In contrast, cuvettes are most useful in testing aqueous biological samples or solutions. Clearly, therefore, slides and cuvettes are not universally interchangeable. For example, it would be impossible to use a cuvette to test a solid biological specimen where the goal of the testing is to review the specimen under a microscope or by some other means to evaluate the uptake of a particular stain on the biological sample.

Def. Ex.[2] B at 11-12.

In that same response, Ventana also distinguished the Hulette and Kelln references which disclosed cuvettes but not slides. Although the term "slides" as used in the claim appears in the phrase "slides having a reagent agitation zone," Ventana limited its distinguishing remarks to the term "slides" without ever discussing the phrase "reagent agitation zone." *See id.* at 16-17.

More specifically, Ventana first pointed out that unlike a slide, a "cuvette is a container with an open end that is partially filled with a liquid." *Id.* at 16. Ventana did not mention or discuss the "reagent agitation zone" at all. *See id.*

Next, Ventana stated that unlike cuvettes, "slides do not have a receptacle to hold liquids." *Id.* Once again, Ventana did not discuss the "reagent agitation zone." *See id.*

Ventana then explained that unlike a cuvette, "liquid remains on a slide primarily by virtue of (1) the association of the liquid with a solid biological sample; and (2) by its surface tension." *Id.* Yet again, Ventana said nothing about the "reagent agitation zone." *See id.*

Finally, Ventana explained that in contrast to a cuvette, "applying air to mix a liquid located on the slide would not be an obvious task . . . ." *Id.* at 16-17. Nothing at all was said about "reagent agitation zone."

---

[2] "Def. Ex. ___" refers to the specified exhibit to the Declaration of Timothy Devlin accompanying Defendant's Markman Brief (D.I. 44).

After drawing these specific distinctions, all of which emphasized the differences between slides and cuvettes, Ventana concluded by stating: "There is absolutely no disclosure or suggestion in the prior art cited above that would lead one of ordinary skill in the art to understand that liquids located on slides could be mixed in an agitation zone with an air stream." *Id.* at 17.

Ventana submits that in the context of the specific distinctions drawn in the prosecution history, this reference to the "agitation zone" does not constitute any type of disclaimer or disavowal with respect to the meaning of "reagent agitation zone." Even if defendant's conjecture were plausible, the presence of "multiple reasonable interpretations" of the prosecution history cannot, as a matter of law, give rise to a disclaimer. *SanDisk*, 415 F.3d at 1287. Most certainly, Ventana's statements to the Examiner do not constitute a clear, unmistakable and unambiguous surrender with respect to the meaning or scope of the term "reagent agitation zone."

The prosecution history plainly reveals that Ventana never addressed the term "reagent agitation zone." Defendant's position on the meaning of this term is based solely on vague inferences it seeks to draw from statements that only discussed the distinction between a slide and a cuvette. The law is plain that "vagueness and inference cannot overcome an ordinary meaning of a claim term." *Northern Telecom Ltd.*, 215 F.3d at 1295. That is "far too slender a reed to support the judicial narrowing" of the term "reagent agitation zone." *Id. at* 1294.

In a related vein, defendant argues that these same passages from the prosecution history support its argument that Ventana distinguished its invention over the prior art because Ventana's invention does not "spill" reagents. *See* Def.'s Opening Br. at 9-10. This argument is unsound. Ventana did not draw this distinction at all because it could not. It could not because the prior art cuvettes did *not* spill reagents. Thus, Ventana's invention did not solve the non-existent spilling problem. Rather, as Ventana repeatedly stressed to the Examiner, the distinction between its invention and the prior art was the use of slides instead of cuvettes.

### 3.  Defendant's Construction is Improperly Based on Litigation Strategy Rather Than on the Intrinsic Evidence.

As explained above, there is nothing in the intrinsic evidence which supports defendant's attempt to alter the plain meaning of "reagent agitation zone." The only "support" for its position is defendant's unspoken desire to fabricate a non-infringement argument where none legitimately exists. This is improper. A brief review of defendant's accused apparatus, the Artisan staining machine, illustrates the point.

The Artisan uses slides precisely as claimed in the '901 patent. The Artisan also adds and mixes reagents on the upper surface of a slide, just as claimed in the '901 patent. However, a user of the Artisan slides can install plastic clips on the slides when they are inserted into the machine. These clips form a vertical border around the periphery of the slide which may impede liquid from spilling off of the slides during operation of the machine.

It is thus apparent why defendant is urging a construction of "reagent agitation zone" that prohibits structural boundaries to inhibit the spilling of liquids. That construction would leave room for defendant to argue that the use of the clips somehow precludes a finding of infringement even though the Artisan admittedly uses slides, and even though each slide has an area on its top surface where reagents are added and mixed. Defendant's desire to create a non-infringement argument is not a proper basis on which to construe the claims of the patent. *See Young Dental Mfg. Co. v. Q3 Special Prods., Inc.*, 112 F.3d 1137, 1141 (Fed. Cir. 1997) ("the claim scope is determined without regard for the accused device"). Moreover, the law is well-settled that if an accused device has all of the elements of the claim, infringement is not avoided by adding additional, unclaimed elements, such as a clip. *See Stiftung v. Renishaw PLC,* 945 F.2d 1173, 1178 (Fed. Cir. 1991) ("It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device").

**B.** **"An Air Mixer Comprising an Air Jet and an Air Supply Means Positioned Adjacent to a Said Reagent Agitation Zone for Mixing Reagents."**

The second disputed phrase includes three structural components that require construction. The three structural components are (1) an "air mixer" which includes (2) "an air jet" and (3) an "air supply means."

**1.** **The "Air Mixer" is "Positioned Adjacent to a Said Reagent Agitation Zone for Mixing Reagents."**

Defendant contends that the claimed "air mixer" is **not** the structure that is "positioned adjacent to the reagent agitation zone." Instead, says defendant, the "air supply means" is the element that must occupy this position. Defendant is wrong, as the prosecution history plainly reveals.

The original language of the claim submitted to the Patent Office (*i.e.,* application claim 72) stated:

> air mixer positioned adjacent an air agitation zone for mixing reactants when in the air agitation zone

Ventana Ex. B at 2. This original language makes plain that the **air mixer** is the structure that is **positioned adjacent** to the agitation zone.

The Examiner rejected this original language under 35 U.S.C. § 112, ¶ 2:

> "as being incomplete for omitting essential elements . . . The omitted elements are: air mixer having a nozzle for directing air at an air agitation zone of the sample support for mixing reactants on the sample support."

Ventana Ex. C at 2. It is thus plain that the Examiner believed that the claimed "air mixer"— which already was claimed to be positioned adjacent to the agitation zone—also had to include a nozzle structure for directing air at that zone.

In response, Ventana met and overcame the Examiner's rejection. Ventana did so by amending the original language to include the additional components of the air mixer that the Examiner deemed necessary. In particular, Ventana stated that the "air mixer," which the claim already stated was positioned adjacent to the agitation zone, now comprises "an air jet and an air supply means":

> an air mixer <u>comprising an air jet and an air supply means</u> positioned adjacent <u>to</u> ~~a~~
> <u>said reagent</u> agitation zone for mixing reagents ~~when in the air agitation zone~~

Ventana Ex. D at 2 (underlines and strikethroughs in original, denoting material added and

deleted by amendment). In its accompanying remarks, Ventana explained that it believed the

rejection had "been overcome by amending claim 72 to recite the essential elements identified by

the Examiner." *Id.* at 11. The Examiner agreed by thereafter dropping the § 112, ¶ 2 rejection.

*See* Ventana Ex. E (making no reference to § 112, ¶ 2). It is thus plain that the entire "air

mixer," which includes the "air jet" and the "air supply means," is what is located adjacent to the

agitation zone.

Defendant nevertheless argues that by this amendment, Ventana intended to clarify the

location of the "air supply means." This makes no sense. The location of the "air supply means"

did not require any clarification because the "air supply means" was not even an element of the

claim before the amendment was made. The prosecution history establishes that in response to

the Examiner's rejection, the "air supply means" was added as a required element of the "air

mixer." And the prosecution history further reveals that neither Ventana nor the Examiner ever

stated that by this amendment that (i) the "air mixer" was no longer required to be positioned

adjacent to the agitation zone, or (ii) the "air supply means," alone, was what must be positioned

adjacent to the agitation zone.

### 2.    "Air Jet" is a Stream of Air Without Restriction on the Shape of the Stream.

The term "air jet" uses commonly understood words and should be given its ordinary

meaning of "a stream of air." *See* Ventana's Opening Br. at 7-8. Defendant, however, asks the

Court to construe "air jet" as "a conical or cylindrical stream of air." Def.'s Opening Br. 10-11.

Ventana agrees with defendant that an air jet is a "stream of air" but disagrees that the air jet

must be "conical or cylindrical." To support its construction, defendant attempts to import

limitations from the specification into the claim. This is improper. "Where a specification does

not *require* a limitation, that limitation should not be read from the specification into the claims."

*Specialty Composites v. Cabot Corp.,* 845 F.2d 981, 987 (Fed. Cir. 1988) (emphasis in original).

There is nothing in the specification that requires the air jet to be conically or cylindrically shaped.

Nevertheless, defendant points to two figures in the patent and two figures in prior art references that purportedly illustrate cone-shaped air jets. These figures prove nothing. They are merely illustrative embodiments of an air jet. They do not and cannot limit the claim because there are no statements in the specification (or the file history) that clearly, unmistakably and unambiguously restrict the claimed air jet to a particular configuration. *See Specialty Composites,* 845 F.2d at 986 (holding that the term "plasticizer" was not limited to external plasticization even though the three examples in the specification were externally plasticized because the patent specification never used the terms "external" or "internal" plasticizers and did not implicitly distinguish between them); *see also Teleflex,* 299 F.3d at 1325 (claim scope only limited "by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.").

Defendant next argues that the "air jet" must be in the shape of a cone or cylinder because the specification describes the air stream in Figure 32 as a "gas jet or cone." Def.'s Opening Br. at 12. This makes no sense. The use of the disjunctive "or" establishes that the air stream may have either a particular shape (*i.e.*, it may be cone shaped) or it may have an unspecified shape (*i.e.*, it may simply be a gas jet).

Saving least for last, defendant advances an analogy to shore up its flawed construction. In particular, defendant contends that the claimed air jet is like the conically or cylindrically shaped jet of water that exits a jet ski. Def.'s Opening Br. at 11. This, too, proves nothing. As defendant acknowledges, the water jet exiting a jet ski is shaped like a cone or cylinder because the water exits a circular hole. *Id.* Indeed, the shape of any stream of fluid (be it gas or liquid) depends on the shape of the orifice from which the fluid exits.[3] For example, during a flood,

---

[3] Thus, the term "air jet" has been used in various contexts to describe jets of air that emerge from nozzles of various shapes. *See, e.g.*, Declaration of Matthew R. Reed in Support of Plaintiff's Answering Claim Construction Brief ("Reed Answering Decl.") at Ex. F (U.S. Patent
(continued...)

rising water may pour through a mail slot into a hapless victim's house. That stream of water would not be in the shape of a cone or cylinder. Rather, it would be rectangularly shaped like the mail slot. Not even defendant contends that Ventana ever restricted the shape of the orifice through which the air jet flows. Consequently, defendant's reliance on its analogy is misplaced.

### 3.    The Proper Construction of "Air Supply Means"

#### a.    The Function of the Air Supply Means is to Supply Air.

As explained in Ventana's opening brief, the function of the claimed "air supply means" is to supply air. The adjectival phrase "air supply" is purely functional language that defines the function performed by the "means" that it modifies. *See Signtech USA, Ltd. v. Vutek, Inc.*, 174 F.3d 1352, 1356 (Fed. Cir. 1999).

Ignoring this plain meaning, defendant confects an argument that the function of the air supply means is to mix reagents. This confection is based on defendant's related argument, already discussed above, that the clause "positioned adjacent to a said reagent agitation zone for mixing reagents" only modifies the "air supply means" element of the "air mixer" rather than the "air mixer" as a whole. *See* Def.'s Opening Br. at 13-15. As already explained in § III.B., *supra*, that argument is unsound. Consequently, for this reason alone, defendant's construction should be rejected.

Moreover, the context of the claim language plainly reveals that the function of the "air mixer" is "for mixing reagents." The originally submitted claim language (application claim 72) stated so clearly ("air mixer positioned adjacent an air agitation zone for mixing reactants"). *See* Ventana Ex. B at 2. When Ventana added the "air supply means" element of the "air mixer" that the Examiner deemed necessary, the claimed function of the "air mixer" did not magically

---

(...continued from previous page)
No. 4,259,006) at 5:2-3 ("the air jet projected through the slit opening"); Ex. G (U.S. Patent No. 5,161,458) at Abstract ("air jet stream is discharged through a thin rectangular orifice"); and Ex. H (U.S. Patent No. 5,672,231) at 1:34-35 ("air jet nozzle 10 having a vertically elongated slit").

disappear. An "air mixer" is "for mixing reagents." An "air supply means" supplies air. Defendant's contorted arguments cannot change these documented facts.

**b.**    **The Structure Corresponding to the Air Supply Means is a Nozzle.**

As set forth in Ventana's Opening Brief, the structure described in the specification that corresponds to the claimed function of the "air supply means" is a nozzle. *See* Ventana's Opening Br. at 10-12. Defendant's proposal of additional structures is misguided. *See* Def.'s Opening Br. at 16-18.

A court may not import structural limitations from the written description that are unnecessary to perform the claimed function. *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999). A structure disclosed in the specification corresponds to the function of the means clause only if the specification or the prosecution history "clearly links or associates" that structure to the function recited in the claim. *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997); *see also Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001).

In this case, both the specification and the prosecution history clearly link the nozzle— and only the nozzle—to the claimed function of supplying air. *See* Ventana's Opening Br. at 11-12. While the channels and mixers that defendant cites may be capable of allowing air to reach the nozzle, defendant has utterly failed to establish any link whatsoever between those additional structures and the claimed function. *See Medtronic, Inc.*, 248 F.3d at 1311 (noting that the proper inquiry was not whether proposed structures were capable of performing the recited function but rather whether those structures were clearly linked or associated with the recited function).

As the prosecution history shows, the inventors overcame the Examiner's rejection based on the omission of the "essential elements" of "a nozzle for directing air at the air agitation zone" when they amended the claim to include an air jet and an air supply means. *See* Ventana's Opening Br. at 11 (citing Ventana Exs. C at 2 and D at 2). The inventors claimed the "essential

element" of "nozzle" by inserting the "air supply means." This satisfied the Examiner, who thereafter dropped the relevant rejection. *See id.* at 11 (citing Ventana Ex. E). This series of events clearly links the function of the air supply means with the nozzle and no other structure.

The specification similarly supports this link between the claimed function and the nozzle. For example, the specification repeatedly refers to nozzles supplying air:

- "The pressurized air is emitted by nozzles 351 and 355 (FIG. 17), stirring the reagent layer on the respective slides." Ventana Ex. A at 16:16-18.

- "The nozzle orifice 351A of each of the mixers 220A is preferabl[y] positioned so that the center of the gas jet or cone 356A is approximately 2 mm above the surface of the slide . . . ." *Id.* at 23:44-48.

- "Nozzles 351 and 355 . . . directing air jets 356 and 357 toward slide surface." *Id.* at 12:53-55.

Thus, both the specification and the prosecution history clearly link and identify the nozzle—and the nozzle alone—as the structure that is necessary to perform the recited function of the air supply means.

### 4. The Meaning of the Term "Adjacent" is Plain on Its Face, But if Construed, Means "Near" Without the Unwarranted Limitation of being "Not Above or Underneath."

As explained in Ventana's opening brief, the term "adjacent" does not need to be construed because the meaning of this term is plain on its face. *See* Ventana's Opening Br. at 13. However, should the Court decide to construe this term, Ventana requests that the Court adopt the plain and ordinary meaning of "adjacent," which is "near."[4] There is no support for defendant's proposal that a first object is not adjacent to a second object if the first is either "above or underneath" the second.

As defendant admits, the term "adjacent" is used liberally throughout the specification. It is clear from even a cursory review of the uses of that term that Ventana did not restrict the term to exclude positions either above or below.

---

[4] The first dictionary definition of "adjacent" is "Close to; lying near." *See* Reed Answering Decl. Ex. I (The American Heritage Dictionary of the English Language) at 21.

DB01:1899721.1                                    061636.1003

For example, the specification describes a method of preventing the dehydration of the biological tissue sample by "covering the sample with an aqueous surface layer by applying an aqueous solution to planar support surface **adjacent** a biological sample mounted thereon." Ventana Ex. A at 4:23-29 (emphasis added).  That is, the specification describes covering a biological sample with an aqueous solution by applying the aqueous solution to the sample directly above the planar support surface (the sample is "mounted thereon").  *See also id.* at 4:29-34 and 4:41-43 (further describing the planar support surface—which is directly beneath the biological sample—as "adjacent").  Because the planar support surface is beneath the biological sample, this passage alone demonstrates that Ventana did not restrict "adjacent" to exclude structures directly above or underneath one another.

The description of Figure 4 also is illuminating on the meaning of adjacent.  The specification describes the splash guard 50 "extend[ing] upward from the intermediate plate 22 to a position **adjacent** the upper plate 8, leaving an air flow gap between the upper edge of the splash guard 50 and the underside of plate 8."  Ventana Ex. A at 7:24-31 (emphasis added).  In other words, splash guard 50 is "adjacent" the upper plate 8 even though it is **directly below** upper plate 8:



Ventana Ex. A at Fig. 4.

These examples show that Ventana did not restrict "adjacent" to positions near but not directly above or underneath. Rather, Ventana broadly used the word "adjacent" to include structures that are directly above and below one another. Defendant was thus plain wrong in telling the Court that "[w]hile sometimes one of the recited adjacent structures is slightly elevated, it is never directly above or beneath the other." *See* Def.'s Opening Br. at 19.

These examples also show that the term "adjacent" is more appropriately defined as "near" rather than defendant's proposal of "next to." "Next to" implies that the relevant objects are immediately adjoining one another, without any space or gap in between. The way "adjacent" is used in the specification, however, rules out defendant's proposed construction. As shown in Figure 4, the splash guard 50 is "adjacent" to plate 8 despite the fact that there is a gap between the two structures. *See* Ventana Ex. A at 7:24-31 ("leaving an air flow gap between the upper edge of the splash guard 50 and the underside of the plate 8").

Defendant also argues that "adjacent" cannot include "underneath" because Ventana distinguished its claims from the prior art. *See* Def. Opening Br. at 20-21. More specifically, Ventana's claims required that the sample carousels be "below" the reagent carousels. *See* Ventana Ex. A at 25:7-8. Ventana distinguished the prior art references on the grounds that their sample carousels were "adjacent to and not beneath" the reagent carousels. *See* Def. Ex. B at 13-16 and 20. The distinction Ventana drew simply means that objects may be adjacent without being above or below one another as required by the claim (*i.e.,* they may be side by side). The distinction does not mean that by being above or below one another, two objects cannot be adjacent. Indeed, if the latter were true, then all Ventana had to say to distinguish the prior art was that the slide carousel was adjacent to the reagent carousel. But Ventana went further precisely because the term "adjacent," alone, does not preclude a position above or below. There simply is no merit to defendant's argument that the inventors defined the term "adjacent" to exclude "above" or "underneath."

## IV.    CONCLUSION

For the foregoing reasons, Ventana respectfully requests that the Court adopt Ventana's proposed constructions and reject defendant's proposal.

YOUNG CONAWAY STARGATT & TAYLOR

*Richard H. Morse*

Richard H. Morse (No. 531)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899
(302) 571-6651
rmorse@ycst.com

Attorneys for Plaintiff
Ventana Medical Systems, Inc.


Of Counsel:

Ron E. Shulman (*pro hac vice)*
Roger J. Chin (*pro hac vice*)
Matthew R. Reed (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
(650) 493-9300

## CERTIFICATE OF SERVICE

I, Richard H. Morse, hereby certify that on November 7, 2005, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of Court using CM/ECF which will send notification of such filing to the following counsel of record:

> Timothy Devlin, Esquire
> Fish & Richardson, P.C.
> 919 North Market Street, Suite 1100
> P.O. Box 1114
> Wilmington, DE  19899-1114

I further certify that on November 7, 2005, I caused copies of the foregoing document to be served on the following non-registered participant in the manner indicated:

### BY E-MAIL AND FEDERAL EXPRESS

> Michael E. Zeliger, Esquire
> Fish & Richardson, P.C.
> 225 Franklin Street
> Boston, MA  02110

YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

*Richard H. Morse*

Richard H. Morse (I.D. No. 531)
17th Floor, Brandywine Building
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6651
rmorse@ycst.com

Attorneys for Plaintiff