## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

VENTANA MEDICAL SYSTEMS INC.,

    Plaintiff,

    v.

DAKOCYTOMATION CALIFORNIA INC.,

    Defendant.

C. A. No. 04-1522-GMS

---

## DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT

---

CONNOLLY BOVE LODGE & HUTZ LLP

James M. Lennon  (No. 4570)
Francis DiGiovanni (No. 3189)
1007 North Orange Street, 8th Floor
P.O. Box 2207
Wilmington, Delaware 19899
(302) 658-9141
jlennon@cblh.com
fdigiovanni@cblh.com

Michael E. Zeliger (*pro hac vice*)
Kirkpatrick & Lockhart
Nicholson Graham LLP
75 State Street
Boston, MA 02109
(617) 951-9153
mzeliger@klng.com

*Attorneys for Defendant, DakoCytomation
California Inc.*

Dated:  March 16, 2006

**TABLE OF CONTENTS**

**Page(s)**

I.      NATURE AND STAGE OF THE PROCEEDINGS ................................................1

II.     SUMMARY OF ARGUMENT ................................................................................1

III.    STATEMENT OF FACTS ......................................................................................2

        A.      Technology Background:  Automated Tissue Staining ................................2

        B.      The Air Mixer Limitation of the '901 Patent ..............................................2

        C.      Dako's Accused Artisan® Product ..............................................................6

IV.     ARGUMENT .........................................................................................................10

        A.      Legal Standards..........................................................................................10

                1.      Summary Judgment .........................................................................10

                2.      Patent Infringement..........................................................................10

        B.      The Artisan® Does Not Infringe ...............................................................13

                1.      The Artisan® Does Not Literally Infringe........................................13

                2.      The Artisan® Cannot Infringe
                        Under The Doctrine of Equivalents, As A Matter Of Law..............18

                        (a)     Prosecution History Estoppel................................................18

                        (b)     Claim Vitiation......................................................................19

                        (c)     The Specific Exclusion Principle...........................................21

V.      CONCLUSION.....................................................................................................22

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*American Permahedge, Inc. v. Barkana, Inc.*, 105 F.3d 1441 (Fed. Cir. 1997)...............20

*Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F.3d 1573 (Fed. Cir. 1996) ................................................................................................................14, 22

*Bai v. L&L Wings, Inc.*, 160 F.3d 1350 (Fed. Cir. 1998)...................................................11

*Bayer AG v. Elan Pharmaceutical Research Corp.*, 212 F.3d 1241 (Fed. Cir. 2000) ................................................................................................................12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................16

*Cooper Cameron Corp. v. Kvaerner Oil Field Products, Inc.*, 291 F.3d 1317 (Fed. Cir. 2002).......................................................................................12, 21

*Day International, Inc. v. Reeves Brothers, Inc.*, 260 F.3d 1343 (Fed. Cir. 2001)......12, 19

*Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394 (Fed. Cir. 1994) ........................13, 23

*Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547 (Fed. Cir. 1997) ................................................................................................................13, 22

*Finance Control System PTY, Ltd. v. OAM, Inc.*, 265 F.3d 1311 (Fed. Cir. 2001)..............................................................13, 21, 22

*General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978 (Fed. Cir. 1997)..................11, 15

*Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605 (1950)................................................................................................................12

*Johnston v. IVAC Corp.*, 885 F.2d 1574 (Fed. Cir. 1989) ................................................11

*K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356 (Fed. Cir. 1999) ................................12, 13, 19

*Kahn v. General Motors Corp.*, 135 F.3d 1472 (Fed. Cir. 1998) ......................................11

*London v. Carson Pirie Scott & Co.*, 946 F.2d 1534 (Fed. Cir. 1991) .............................14

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ..................................................................................................11

*Moore USA, Inc. v. Standard Register Co.*, 229 F.3d 1091 (Fed. Cir. 2000) ....................13

*Novartis Pharms. Corp. v. Abbott Laboratoriess, Inc.*, 375 F.3d 1328 (Fed. Cir. 2004) ........................................................................................................13, 22

*SciMed Life System, Inc. v. Advanced Cardiovascular*, 242 F.3d 1337 (Fed. Cir. 2001) ........................................................................................................13, 22

*Southwall  Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570 (Fed. Cir. 1995) .....19, 20

*TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360 (Fed. Cir. 2002) ...........................11, 16

*Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316 (Fed. Cir. 2001) .............16

*Texas Instruments, Inc. v. United States International Trade Commission*, 988 F.2d 1165 (Fed. Cir. 1993) ............................................................................20

*United States Gypsum Co. v. National Gypsum Co.*, 74 F.3d 1209 (Fed. Cir. 1996) ..............................................................................................................11

*Warner-Jenkinson Co. v. Hilton-Davis Chemical Co.*, 520 U.S. 17 (1997) ...............12, 20

**RULES**

Fed. R. Civ. P. 56(c) ..........................................................................................................11

## I.      NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement case.  The plaintiff, Ventana Medical Systems Inc. ("Ventana"), accuses the defendant, DakoCytomation California Inc. ("Dako"), of infringing claims 1-7, 20-22, 24-25, 30, and 45 of U.S. Patent No. 6,827,901 ("the '901 patent") by making, using, offering to sell, and/or selling its Artisan® product.  (D.I. 1.)  Of these claims, only claims 1 and 45 are independent.

On December 13, 2005, the Court issued its Claim Construction Order.  (D.I. 56.)  With respect to the disputed claim term "adjacent," which appears in both independent claims, the Court held that "The term 'adjacent' is construed as 'next to, but not above or beneath.'"

Because Dako believes this claim construction is dispositive, on February 9, 2006, Dako submitted a letter brief requesting permission to move for summary judgment of noninfringement, both literal and under the doctrine of equivalents.  (D.I. 73.)  On March 2, 2006, the Court granted Dako permission to file.  Accordingly, Dako now moves for summary judgment.

## II.      SUMMARY OF ARGUMENT

1.      All of the asserted claims require: "an air mixer comprising an air jet and an air supply means positioned adjacent to [a] said reagent agitation zone for mixing reagents, said air mixer directing a jet of air at the reagent agitation zone thereby inducing mixing in the reagent agitation zone."  The Court has construed "adjacent" to mean "next to, but not above or beneath."

2.      Dako's accused Artisan® product has an air mixer positioned above the reagent agitation zone, not adjacent to the zone.  The Artisan®, therefore, does not literally infringe.

3.     The Artisan® also does not infringe under the doctrine of equivalents.  Any possibility of equivalence infringement is precluded, as a matter of law, by: (a) prosecution history estoppel; (b) the principle of claim vitiation; and (c) the specific exclusion principle.

4.     Because there are no material facts in dispute, summary judgment of noninfringement is warranted.

## III.     STATEMENT OF FACTS

### A.     Technology Background:  Automated Tissue Staining

Both Ventana and Dako sell instruments that automatically stain tissue samples to help physicians identify morphologies in the sample, such as cancer.  Tissue staining involves exposing the tissue to a sequence of chemicals, called reagents, under controlled conditions.  In general, the reagents bind to and highlight certain diseased tissue, such as cancer cells, allowing physicians to diagnose the presence of the disease.  (Declaration of Scott Leon, hereinafter "Leon Decl.", ¶ 8.)

Historically, tissue staining was performed manually—a technician would sequentially stain each tissue sample individually.  Over the past twenty years, however, a number of companies, including Dako and Ventana, have developed sophisticated instruments which automate staining of multiple tissue samples simultaneously, greatly improving the efficiency of diagnostic analysis.  (Leon Decl., ¶ 9.)  Both parties own or license multiple patents purportedly covering different aspects of their tissue staining instruments.

### B.     The Air Mixer Limitation of the '901 Patent

Ventana's '901 patent describes a tissue staining instrument with a slide support carousel (24) and a reagent carousel (10).  One embodiment is shown in Figure 1, reproduced below:

2



Slides with tissue samples are loaded onto the slide supports (26), and reagent bottles (12) are loaded onto the reagent carousel (10). During operation, the reagent carousel is rotated, positioning specific reagent bottles over specific slides, allowing reagents to be sequentially dispensed onto the slides. ('901 Patent, attached to D.I. 1 and D.I. 44 as Ex. A, 6:38-7:1.)

The '901 specification is lengthy, describing a number of different features of the instrument, including computer control, slide heating, rinse zones, and bar coding. For this motion, the Court need only focus on one aspect of the instrument and the claims: the air mixer.

After applying reagents to the slides, the '901 patent describes stirring the reagents using a vortex air mixer. ('901 Patent, 3:65-67, 12:46-13:15, 23:19-65.) Mixing reagents on slides presents unique challenges as compared to mixing reagents in other media, such as test tubes. As the inventors told the patent office during prosecution of the '901 patent, "agitating liquids on slides pose difficult and unexpected agitation problems." (Ex. A, Apr. 16, 2004 Reply, at 16.) [1]

---

[1] The Exhibits A-D referenced herein are attached to the Declaration of Michael E. Zeliger.

Slides are flat, and therefore "do not have a receptacle to hold liquids." (*Id.*) Thus, "an air

stream could likely direct some or all of the liquid off of the slide." (*Id.* at 16-17.)

The '901 patent purports to solve this problem by using "air jets" to swirl the reagents in

a circle within a discrete area, such that they do not spill off of the surface of the slide. The '901

patent discloses two mixing embodiments; they are similar in all respects, except for the number

of air jets used to spin the reagents. The first embodiment is depicted below.



('901 Patent, Fig. 17.) The red arrows indicate air flow. The shape and direction of the flow

creates air jets that blow past both sides of the reagent puddle sitting on the slide. Since the jets

flow in opposite directions, they cause the reagents to spin in a vortex. The patent describes this

first embodiment as follows:

> Pressurized air is supplied to the nozzle channels 350 and 354 by channel 358.
> The reagent solution covered by a layer 360 of evaporation inhibiting liquid 360
> is stirred on the surface of the biological sample by applying at least one gas
> stream 356 or 357 to an area of the surface of the evaporation inhibiting liquid

4

layer 360 between the center of the evaporation inhibiting liquid and the edge of the planar support surface 361 or 362 of the slide 228. The gas stream impacts the surface of the evaporation liquid surface layer 360 and moves the underlying reagent solution in a circular path on the tissue section.

('901 Patent, 12:58-13:2.)

A second embodiment, employing only one air jet, is also disclosed in Figure 32:



FIG. 32

('901 Patent, Fig. 32.) As the patent explains:

FIG. 32 illustrates an alternative embodiment of a vortex air mixer 220A which in this case is a single mixer. Each of the single vortex air mixers 220A is positioned at the inner radius of the slides 234 such that an [sic] gas jet or cone 356A of, for example, air or the like, blows outwardly adjacent one of the longitudinal lateral edges 234P of the associated slide 234 to effect mixing in a manner similar to that described with respect to FIG. 17. More specifically, the gas stream 356A impacts the surface of the evaporation liquid surface layer 360 and moves the underlying reagent solution in a circular path on the tissue section.

('901 Patent, 23:19-29.)

The two independent claims of the patent both claim the air mixer as follows:

an air mixer comprising an air jet and an air supply means positioned adjacent to [a] said reagent agitation zone for mixing reagents, said air mixer directing a jet of air at the reagent agitation zone thereby inducing mixing in the reagent agitation zone.

5

('901 Patent, claims 1 and 45.)[2]  In the Claim Construction Order, the Court construed the claim terms as follows:

1.    The term "reagent agitation zone" is construed as "an area on the slide's upper surface where reagents are added and mixed."

2.    The term "air mixer" is construed as "the device, including the air jet and the air supply means, that is positioned adjacent to the reagent agitation zone for mixing reagents."

3.    The term "air jet" is construed as "a stream of air."

4.    The term "air supply means" is construed as "a device for supplying air, comprising the nozzle."

5.    The term "adjacent" is construed as "next to, but not above or beneath."

(D.I. 56.)

For purposes of this Motion, the critical finding is that the air mixer must be "next to, but not above or beneath" the reagent agitation zone.

## C.    Dako's Accused Artisan® Product

A picture of Dako's Artisan® device, taken from the Artisan® User's Manual, is reproduced below:

---

[2] The parties have agreed that the air mixer limitation has the same meaning in both claims 1 and 45.  The only difference between the language in the two claims is the presence of the bracketed word "a" in claim 1.



(Ex. B at 14.)  One fundamental difference between the Artisan® and the instrument described in

the '901 patent is the type of device used to hold the tissue samples.  Instead of just flat slides,

the Artisan® uses slides in combination with plastic "slide clips" to form a chamber for holding

the tissue sample and reagents:



(Leon Decl., ¶ 10.)[3]  Because the tissue sample and reagents are placed within a chamber, the

Artisan® uses a completely different mechanism for mixing reagents.  Instead of blowing a jet of

---

[3] The Artisan® has used two versions of its slide clip, the one pictured above and a newer
version.  (Leon Decl., ¶ 11.)  The two versions are very similar—they differ primarily in the
thickness of certain walls.  (*See* Leon Decl., ¶ 11, showing the two clips side-by-side.)  The

air from the side to swirl the reagents, the Artisan® directs a curtain of air from directly above

that "mixes and evenly distributes the reagents over the surface of the slide." (Ex. B at 13; Leon

Decl. ¶ 12.)  A photograph of the air mixing mechanism in operation is shown below:



The mechanism includes a plenum box positioned above the slide clip and an air line that feeds

air to the plenum.  (Leon Decl., ¶ 14.)  In the bottom of the plenum box is a slit opening, about

10-20 thousandths of an inch wide, through which the air blows:

---

differences are immaterial for purposes of this motion, and Ventana has not distinguished
between the two clips in its infringement contentions or in its expert's report.



(Leon Decl., ¶ 15.)  In operation, the plenum moves horizontally back and forth above the slide clip, blowing a curtain of air down onto the chamber holding the sample and reagents.  This air curtain causes waves to form in the reagent pool, which spread and mix the fluid.  (Leon Decl., ¶ 16.)  The waves are visible in the gold-colored reagent pool in the photograph on page 9.  (*Id.*)

The motion of the plenum above the slide clip is illustrated graphically below:



At all times, the plenum and its air slit are located above the "reagent agitation zone" (colored green), not adjacent to it.  (Leon Decl., ¶ 18.)

Indeed, it would be impossible for the Artisan® to position its air mixer adjacent to the reagent agitation zone and blow from the side, as described and claimed in the '901 patent.  Because the Artisan® uses slide clips with a reagent chamber, rather than just flat slides, air blown from the side would be blocked by the wall of the slide clip, and would not reach the reagent pool.  Similarly, if the instrument described in the '901 patent used an air mixer like the Artisan's, then the "air stream could likely direct some or all of the liquid off of the slide," since

the '901 instrument uses only flat slides with no chamber.  (Ex. A at 16-17.)  This is exactly the problem the inventors purportedly solved by using an adjacent air mixer, which blows air from the side to move the reagents in a circular path, thereby mixing the reagents without pushing them off the slide.  ('901 Patent, 12:58-13:2; Ex. A at 16.)

## IV.    ARGUMENT

### A.    Legal Standards

#### 1.    Summary Judgment

Summary judgment is warranted when there is "no genuine issue as to any material fact and…the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *United States Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996).  Because patent cases often turn on questions of claim construction, which is a matter of law, patent cases are particularly amenable to summary disposition.  *See Bai v. L&L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998); *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997).

#### 2.    Patent Infringement

Determining whether a product infringes a patent is a two-step process.  First, the Court construes the terms of the claims as a matter of law, and second, the properly construed claims are compared to the accused product.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).  The plaintiff has the burden of proving infringement.  *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1371 (Fed. Cir. 2002).

To literally infringe, an accused device must meet every limitation of a claim *exactly*.  *Kahn v. General Motors Corp.*, 135 F.3d 1472, 1476 (Fed. Cir. 1998); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580 (Fed. Cir. 1989).

10

To infringe under the doctrine of equivalents, the accused device must contain an equivalent to every limitation that is not literally present. *Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*, 520 U.S. 17, 24 (1997). An element is equivalent to a claim limitation if it is insubstantially different, or it performs substantially the same function, in substantially the same way, to achieve substantially the same result. *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950).

There are several limitations on the doctrine of equivalents, each of which is a question of law for the court. *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1366-67 (Fed. Cir. 1999) (citing *Warner-Jenkinson*, 520 U.S. at 39 n.8). First, "prosecution history estoppel" precludes a patent owner from using the doctrine of equivalents to recapture subject matter surrendered during prosecution of the patent. *Day Int'l, Inc. v. Reeves Brothers, Inc.*, 260 F.3d 1343, 1350 (Fed. Cir. 2001); *K-2 Corp.*, 191 F.3d 1356, 1366-67 (Fed. Cir. 1999)). The estoppel may arise both from claim amendments and from arguments submitted to the examiner during prosecution. *Bayer AG v. Elan Pharmaceutical Research Corp.*, 212 F.3d 1241, 1251 (Fed. Cir. 2000). In determining whether claim scope has been surrendered, the "the proper inquiry [is] whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter." *Id.* at 1252 (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998) (en banc)). Application of prosecution history estoppel is a question of law. *K-2*, 191 F.3d at 1368.

Second, application of the doctrine of equivalents cannot "entirely vitiate" a claim limitation. *Warner-Jenkinson*, 520 U.S. at 39; *K-2*, 191 F.3d at 1367. In other words, the doctrine of equivalents cannot expand a claim to the point that it effectively removes a limitation from the claim. *See, e.g.*, *Cooper Cameron Corp. v. Kvaerner Oil Field Prods., Inc.*, 291 F.3d

11

1317, 1321-22 (Fed. Cir. 2002) (holding, that a connection "above" two plugs is not equivalent to a connection "between the two plugs," since such a finding "would vitiate that limitation"); *Fin Control Sys. PTY, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1320 (Fed. Cir. 2001) (holding that a screw that engages a front surface cannot satisfy a claim limitation requiring "lateral" or "side" engagement, because such a holding "would improperly read the 'lateral' and 'side' limitations out of [the] claim"); *Moore USA, Inc. v. Standard Register Co.*, 229 F.3d 1091, 1106 (Fed. Cir. 2000) (holding that 47.8% cannot be equivalent to a "majority," since allowing "what is undisputedly a minority (i.e., 47.8%) to be equivalent to a majority would vitiate" the "majority" claim limitation). Claim vitiation, like prosecution history estoppel, is a question of law for the Court. *K-2*, 191 F.3d at 1367 (citing *Warner-Jenkinson*, 520 U.S. at 39 n.8).

Third, the doctrine of equivalents cannot cover subject matter that is specifically excluded by the language of the claim or by the court's claim construction. *See, e.g., Novartis Pharms. Corp. v. Abbott Labs., Inc.*, 375 F.3d 1328, 1337 (Fed. Cir. 2004) (holding that a surfactant cannot be an equivalent of a non-surfactant, when the court construed the claims to require a non-surfactant); *SciMed Life Sys., Inc. v. Advanced Cardiovascular*, 242 F.3d 1337, 1347 (Fed. Cir. 2001) (a non-metallic device cannot be an equivalent of a metallic device); *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1561 (Fed. Cir. 1997) (claim phrase "under an inert gas atmosphere…specifically excludes reactive gases—such as 'heated air'—from the scope of the claims," thereby precluding infringement under the doctrine of equivalents); *Dolly, Inc. v. Spalding & Evenflo Cos.*, 16 F.3d 394, 400 (Fed. Cir. 1994). This common sense principle, sometimes called the "doctrine of specific exclusion," is a corollary to

the claim vitiation/all elements rule. *Athletic Alternatives, Inc. v. Prince Manufacturing, Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996).

### B.    The Artisan® Does Not Infringe

The Artisan® lacks the air mixer required by all the asserted claims of the '901 patent.[4] Specifically, the Artisan® does not have an air mixer positioned "adjacent" to the reagent agitation zone, either literally or under the doctrine of equivalents.

### 1.    The Artisan® Does Not Literally Infringe

The claims require:

> an air mixer comprising an air jet and an air supply means positioned adjacent to [a] said reagent agitation zone for mixing reagents, said air mixer directing a jet of air at the reagent agitation zone thereby inducing mixing in the reagent agitation zone.

('901 Patent, claims 1 and 45.) The Court has construed the term "air mixer" to mean "the device, including the air jet and the air supply means, that is positioned adjacent to the reagent agitation zone for mixing reagents." The Court also construed the "air jet" to be "a stream of air" and the "air supply means" to be "a device for supplying air, comprising the nozzle." Finally, the Court construed "adjacent" to mean "next to, but not above or beneath." (D.I. 56.)

Under the Court's construction, the "air mixer" in the Artisan® would have to be the slit in the plenum (the "nozzle") plus the curtain of air blown through the slit (the "air jet"). From the above photographs and the attached declaration and exhibits, it is indisputable that the "air mixer" in the Artisan® is positioned *above* the reagent agitation zone, not "next to" the zone. Consequently, the Artisan® does not literally infringe, as a matter of law.

---

[4] As noted above, the air mixer limitation is found in both of the patent's independent claims, claims 1 and 45. If an independent claim is not infringed, the claims which depend therefrom are also not infringed. *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1539 (Fed. Cir. 1991).

In its letter brief (D.I. 76), Ventana tries to preserve its infringement case by presenting a new theory of infringement. In the letter, Ventana argues that because the slit in the plenum begins its motion outside the wall of the slide clip, the air mixer is, at that point, "next to, but not above" the reagent agitation zone. Ventana focuses on the following figure, taken from Dako's letter brief:



This figure illustrates the "home" or starting position of the plenum. (Leon Decl., ¶ 19.) In the figure, the "reagent agitation zone" is colored green. According to Ventana, in this home position, "the nozzle and the air jet [that comprise the claimed air mixer] are next to, but not above or beneath, the reagent agitation zone." (D.I. 76 at 3.)

There are at least two flaws with this new argument. First, in the position shown above, the air mixer *is* still above the reagent agitation zone, albeit not directly above. At the least, however, it is not "*next to*, but not above or beneath," the reagent agitation zone, which is the Court's full claim construction for "adjacent." Since there is no dispute here about the physical position of the plenum, whether it satisfies the "adjacent" limitation is purely a question of law. *See General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997) ("Where the parties do not dispute any relevant facts regarding the accused product,…the question of literal infringement collapses into one of claim construction and is amenable to summary judgment.")

Second, even if the air mixer could somehow be considered "next to" the reagent agitation zone in its home position, it still does not satisfy the claim. The claim requires "an air

14

mixer…positioned adjacent to [a] said reagent agitation zone for mixing reagents, said air mixer *directing a jet of air at the reagent agitation zone thereby inducing mixing in the reagent agitation zone*." ('901 Patent, claims 1 and 45, emphasis added.)  Thus, to prove infringement under its new theory, Ventana must show that, in the home position, the air mixer is: (a) "directing a jet of air at the reagent agitation zone"; and (b) "thereby inducing mixing in the reagent agitation zone."  Ventana has presented no evidence of either.  In fact, Ventana has never even *alleged* that the air mixer directs a jet of air at the reagent agitation zone from the home position, or that it induces mixing from that position, either in its interrogatory answers or in its expert's report.[5]

Ventana bears the burden of proof on infringement.  *TechSearch*, 286 F.3d at 1371. Ventana has failed to present any evidence to support its new theory of infringement (that the Artisan® infringes when the plenum is in the home position).  Ventana therefore cannot meet its burden of proof, and summary judgment is warranted.  *See Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001) ("Summary judgment of noninfringement is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment…against a party who fails to make a showing

---

[5] The first time Ventana raised its argument that the home position is "adjacent" to the reagent agitation zone was in its expert's report of February 1, 2006, nearly two months after the Court's claim construction, and several weeks after the close of fact discovery.  And the expert report contains no allegation or evidence that the air mixer is "directing a jet of air at the reagent agitation zone" or "inducing mixing" from that position.  (Sharon Expert Report, Ex. C, ¶ 16.)

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")[6]

In any event, there is good reason why Ventana has not alleged that the Artisan's® air mixer is "directing a jet of air at the reagent agitation zone" or "inducing mixing" from the home position: such an allegation could not pass even superficial scrutiny. As explained in the noninfringement Expert Report of Ari Glezer, when the plenum is beyond the wall of the slide clip, it is directing air at the wall of the slide clip or the outside of the slide clip, not at the reagent agitation zone. (Ex. D at 13-14.)[7] In his Report, Dr. Glezer's first provides a picture of the plenum in its home position:



and then provides a picture showing the plenum in what he calls the "boundary situations":



---

[6] Since fact discovery has closed, and Ventana has already submitted its expert's report, it is too late for Ventana to introduce new evidence in support of its "home position" infringement theory.

[7] Dr. Glezer's expert report was executed under penalty of perjury (Ex. D at 19), and therefore constitutes declaration evidence in support of Dako's Motion for Summary Judgment.

(*Id.* at 14.)  In both of these pictures, the red arrow represents the air curtain blown through the narrow slit in the plenum.  (*Id.* at 10.)  Dr. Glezer then explains why (as should be obvious from the pictures) the air mixer is not "directing a jet of air at the reagent agitation zone" from these positions:

> When the mixer is in the home position, the air mixer is directing air at the bar code area.  When the air mixer is in one of the two boundary situations, the air mixer is directing air at the top of the slide clip.  Accordingly, when the nozzle [slit] of the plenum is outside Zone A [the region directly above the green-colored reagent agitation zone], the Artisan® does not satisfy the "said air mixer directing a jet of air at the reagent agitation zone" limitation and therefore does not literally infringe any of the '901 patent claims.

(*Id.* at 14.)

Dr. Glezer then goes on to explain that the air mixer also is not "thereby inducing mixing in the reagent agitation zone" when outside of "Zone A":

> If the nozzle of the plenum is outside Zone A, the air mixer is then no longer directing air at the reagent agitation zone and therefore cannot induce mixing within the reagent agitation zone.  Also, I personally observed the Artisan® at its home position and when at the home position, I did not see any evidence that the air blowing out of the nozzle was inducing any mixing of the reagents in the reagent agitation zone.  In this situation, the Artisan® does not satisfy the "thereby inducing mixing in the reagent agitation zone" limitation and therefore does not literally infringe the claims of the '901 patent.

(*Id.* at 16.)

Thus, in summary, the Artisan® does not literally satisfy the "air mixer" limitation, even in the home position, because: (a) it is not "next to" the reagent agitation zone in that position; (b) it is not "directing a jet of air at the reagent agitation zone" when beyond the inner wall of the slide clip; and (c) it is not "thereby inducing mixing in the reagent agitation zone" when beyond the inner wall of the slide clip.  Ventana has not—and cannot—produce any evidence to the contrary.  Summary judgment of no literal infringement is therefore warranted.

17

2.     **The Artisan® Cannot Infringe Under The Doctrine of Equivalents, As A Matter Of Law**

Dako is also entitled to summary judgment of noninfringement under the doctrine of equivalents.  In this case, three legal principles bar a finding of infringement by equivalents:  (a) prosecution history estoppel; (b) the doctrine of claim vitiation; and (c) the doctrine of specific exclusion.  Application of each of these principles is a question of law.  *K-2*, 191 F.3d at 1366-67.

(a)     **Prosecution History Estoppel**

Ventana is estopped from arguing that an air mixer positioned above the reagent agitation zone is equivalent to an air mixer positioned adjacent the zone, because Ventana surrendered any such claim scope during prosecution of the patent.  As detailed in Dako's claim construction briefing, during prosecution, Ventana distinguished "adjacent" structures from structures which were above and below each other.  Specifically, with respect to a claim limitation that required the slide carousel to be "below" or "beneath" the reagent carousel, Ventana repeatedly distinguished prior art in which the two carousels were "adjacent."  (*See* Ex. A; D.I. 43 at 20-21; and Exs. C, K, and L to D.I. 44.)  Having argued that "below" (and, by implication, above) is different from "adjacent," Ventana cannot now argue that the two are equivalent.  *See Day*, 260 F.3d at 1350; *K-2 Corp.*, 191 F.3d 1356, 1366-67 (Fed. Cir. 1999).

In its letter brief, Ventana argues that prosecution history estoppel does not apply "because the alleged disclaimer of subject matter was made with respect to an entirely different claim element."  (D.I. 76 at 4.)  This statement is contrary to case law.  The Federal Circuit has held repeatedly that estoppels are not limited to particular claims.  If an argument limits the meaning of a claim term, that limitation applies everywhere the term appears.  *See Southwall*

18

*Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1584 (Fed. Cir. 1995) ("once an argument is made regarding a claim term so as to create an estoppel, the estoppel will apply to that term in other claims"). "Competitors must be able to rely on the definition of a claim term given in the prosecution history, even when the term is later incorporated into different claims, in order to understand what constitutes infringement." *Id. See also American Permahedge, Inc. v. Barkana, Inc.*, 105 F.3d 1441, 1446 (Fed. Cir. 1997); *Texas Instruments, Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1175 (Fed. Cir. 1993).

Ventana made clear during prosecution that something "adjacent" was *not* above or below, and the Court construed the claim term "adjacent" consistently with Ventana's prosecution statements. Ventana, therefore, is estopped from now seeking coverage of air mixers above the reagent agitation zone.

### (b)     Claim Vitiation

Second, finding the Artisan® to be "equivalent" would vitiate a limitation of the claim, which is impermissible as a matter of law. *Warner-Jenkinson*, 520 U.S. at 39.

The asserted '901 patent claims require:

> an air mixer…positioned adjacent to [a] said reagent agitation zone for mixing reagents, said air mixer directing a jet of air at the reagent agitation zone thereby inducing mixing in the reagent agitation zone.

If an air mixer positioned above the reagent agitation zone, rather than adjacent, were deemed "equivalent," then the phrase "positioned adjacent to said reagent agitation zone" would effectively be read out of the claim. The federal circuit has held repeatedly that claims limitations may not be "vitiated" in this manner by the doctrine of equivalents. Two recent federal circuit cases: *Cooper* and *Fin Control*, are illustrative.

19

In *Cooper*, the patent concerned subsea wellheads with a "workover port" for fluid circulation. 291 F.3d at 1318-19. The claims required that the port extend "laterally through the wall of the spool tree from *between the two plugs*." *Id.* at 1319 (emphasis in original). Since the accused device had a workover port "placed above both 'plugs'…but not between the two plugs," the district court granted summary judgment of noninfringement, and the federal circuit affirmed. *Id.* at 1320-21. With respect to the doctrine of equivalents, the federal circuit held that:

> the workover port in Kvaerner's accused device enters the wellhead assembly "above" the two plugs, which cannot be equivalent to a connection "between the two plugs." Were we to ignore Cooper's decision to claim in the '707 patent a workover port that connects to the assembly only "between" the plugs, we would vitiate that limitation and thereby run afoul of the all-limitations rule.

*Id.* at 1322.

In *Fin Control*, the patent concerned surfboards with detachable fins. 265 F.3d at 1313. The fins could be releasable attached to the board by engaging tabs on the fin with grub screws mounted inside the surfboard. *Id.* at 1313-14. The key claim limitation required that the board's grub screws be "laterally engaging" the fin's tabs when the fin was attached. *Id.* at 1316.

The district court construed "laterally" to mean "from the side," and granted summary judgment of noninfringement, since the accused surfboard's screws engaged the fin's tabs from the front. *Id.* at 1316-17. The federal circuit affirmed. *Id.* at 1320. With respect to the doctrine of equivalents, the federal circuit held that finding the accused product's frontal engaging screws to be equivalent would vitiate the "lateral" claim limitation:

> We also affirm the district court's conclusion that there can be no infringement under the doctrine of equivalents because applying the doctrine to find infringement in this case would improperly read the "lateral" and "side" limitations out of claim 13. Here the patentee limited claim 13 to lateral

20

> engagement, and, as correctly interpreted, lateral engagement must necessarily exclude engagement from the front or the rear with respect to the surfboard orientation.

*Id.* at 1320-21.

In the present case, as in *Cooper* and *Fin Control*, the claim requires that two items be positioned in a particular orientation. Specifically, the air mixer must be "adjacent" the reagent activation zone, which the Court has construed to mean "next to, but not above or beneath." (D.I. 56.) Just as in *Cooper* and *Fin Control*, allowing coverage of an air mixer which is *not* adjacent the zone would effectively read the limitation out of the claim, which is impermissible. Accordingly, there can be no infringement under the doctrine of equivalents.

### (c)    The Specific Exclusion Principle

Finally, the "specific exclusion" principle bars infringement under the doctrine of equivalents. The Court has construed "adjacent" to mean "next to, *but not* above or beneath" (D.I. 56, emphasis added). Thus, the claim specifically excludes positioning an air mixer above the reagent agitation zone.

Where the claim language or the claim construction explicitly excludes a feature, a product with that feature cannot be equivalent, as a matter of law. *See, e.g.*, *Novartis*, 375 F.3d at 1337 (holding that a surfactant cannot be an equivalent of a non-surfactant, where the court construed the claims to require a non-surfactant); *SciMed*, 242 F.3d at 1347 (a non-metallic device cannot be an equivalent of a metallic device); *Eastman Kodak*, 114 F.3d at 1561 (claim phrase "under an inert gas atmosphere…specifically excludes reactive gases—such as 'heated air'—from the scope of the claims," thereby precluding infringement under the doctrine of equivalents). *See also Athletic Alternatives*, 73 F.3d at 1582 ("the intermediate offset distance

21

required by the properly construed claim cannot have an equivalent in a racket with only two

offset distances.   In other words, the two-distance splayed string system was specifically

excluded from the scope of the claims") (citation omitted).  *Dolly*, 16 F.3d at 400.

Thus, the '901 claims' specific exclusion—that the air mixer cannot be above the reagent

activation zone—also precludes any possibility of infringement under the doctrine of

equivalents, as a matter of law.

**V.      CONCLUSION**

For the reasons provided above and in the accompanying Declarations, Dako requests

that the Court grant its motion for summary judgment of noninfringement and dismiss Ventana's

complaint.

<div style="margin-left:40%">

**CONNOLLY BOVE LODGE & HUTZ LLP**

*/s/ James M. Lennon*_____
James M. Lennon  (No. 4570)
Francis DiGiovanni (No. 3189)
1007 North Orange Street, 8th Floor
P.O. Box 2207
Wilmington, Delaware 19899
(302) 658-9141
jlennon@cblh.com
fdigiovanni@cblh.com

Michael E. Zeliger (*pro hac vice*)
**KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP**
75 State Street
Boston, MA 02109
(617) 951-9153
mzeliger@klng.com

*Attorneys for Defendant, DakoCytomation
California Inc.*

March 16, 2006

</div>

22

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on that on March 16, 2006, I electronically filed the foregoing

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY

JUDGMENT OF NONINFRINGEMENT with the Clerk of Court using CM/ECF which will

send notification of such filing to the following:

Richard H. Morse
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building, 17th Floor
P.O. Box 391
Wilmington, DE 19899
(also served via hand delivery)
*Attorneys for Plaintiff, Ventana Medical Systems, Inc.*

I HEREBY CERTIFY that on March 16, 2006, I mailed via Federal Express, the

foregoing DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR

SUMMARY JUDGMENT OF NONINFRINGEMENT to the following non-registered

participants:

Ron E. Shulman
Matthew R. Reed
Roger J. Chin
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304
*Attorneys for Plaintiff, Ventana Medical Systems, Inc.*

*/s/ James M. Lennon*
James M. Lennon (#4570)